IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEVEN PAPASIDERO,

    Plaintiff,

-vs-

CASE NO.: 6:15-CV-678-ORL-22GJK

XEROX CORPORATION/AFFILIATED
COMPUTER SYSTEMS INC. (ACS),

    Defendant.

_____/

## COMPLAINT

Plaintiff, STEVEN PAPASIDERO, by and through his undersigned counsel, sues the Defendant, XEROX CORPORATION and AFFILIATED COMPUTER SYSTEMS INC. (ACS), A XEROX COMPANY., and in support thereof respectfully alleges the following:

1. Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collections Practices Act, Chapter 559, *et seq.* ("FCCPA").

## INTRODUCTION

2. The TCPA was enacted to prevent companies like XEROX CORPORATION AND AFFILIATED COMPUTER SYSTEMS INC. (ACS) from invading American citizen's privacy and prevent abusive "robo-calls."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. Venue is proper in this District because the Plaintiff resides in this District (Volusia County), the phone calls were received in this District, and the Defendant transacts business in Volusia County, Florida.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Volusia County, Florida, and resides in this District.

10. Defendant is corporation and a citizen of the State of Connecticut with a principal place of business and/or office for transacting its business located at 45 Glover Ave., P.O. Box 4505, Norwalk, CT, 06856.

11. Defendant has a Registered Agent for Florida located at Prentice-Hall Corporation Systems, Inc. 1201 Hayes Street, Suite 105, Tallahassee, FL 32301

12. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, Volusia County, Florida, by the Defendant's placing of illegal calls to Volusia County, Florida.

13. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number up to three (3) times a day from approximately September, 2013 through the filing of this complaint, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

14. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). When Plaintiff answered the calls from the Defendant, there was always a noticeable silence prior to a live representative appearing on the line.

15. Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number after September, 2013, was done so after he had revoked consent and without the "prior expressed consent" of the Plaintiff.

16. Plaintiff is the regular user and carrier of the cellular telephone number, (386) ***-2670, and was the called party and recipient of Defendant's autodialer calls. (AT&T is the current cell phone provider)

17. The autodialer calls from Defendant came from the telephone numbers including but not limited to 315-724-2369 and 315-278-4465; and when the Plaintiff answered, the representative identified himself as calling from ACS/Xerox Company. When those same numbers are called, an automated voice answers and identifies itself as "ACS/Xerox Company, Education Services"

18. After receiving numerous autodialer calls since September, 2013 to his cellular telephone number from Defendant, Plaintiff spoke to a representative of Defendant in September, 2013. He informed the representative that they were calling for the wrong person and told Defendant's representative to "stop calling me."

19. In several of the hundreds of calls from the Defendant, the representative asked for "Christina Spinks." On other calls they asked for a "Margaret Margolia" or "Joseph Alden." Plaintiff repeatedly asked the Defendant's representatives to stop calling him and that he did not know any of those people.

20. Despite Plaintiff informing Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued.

21. Plaintiff continued to answer the calls and informed the Defendant to stop calling on several occasions. The Defendant's representative informed Plaintiff on at least five occasions that "they were going to take it to their supervisor and he/she would address the issue."

4

22. The autodialer calls from Defendant continued from September, 2013, through the filing of this complaint. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all autodialer calls made to Plaintiff.

23. The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of the incorrect number. The Plaintiff received in his voicemail several prerecorded messages from the Defendant.

24. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls or prerecorded messages well-beyond September, 2013, when Plaintiff first advised Defendant to stop calling Plaintiff.

25. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individual, like Plaintiff, advising Defendant to stop calling.

26. Defendant has 269 complaints specific to their student loans collection practices in the last four years. See http://www.consumeraffairs.com/finance/acs.html

27. Defendant's corporate policy provided no means for the Plaintiff to have his cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

27. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

5

28. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call the wrong people or people who have revoked consent to be called.

29. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

30. Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephone.

31. Plaintiff has never had a student loan with the Defendant.

32. From March 2012 until today, the Defendant has had 682 complaints reported to the Consumer Financial Protection Bureau (CFPB). See https://data.consumerfinance.gov/dataset/Consumer-Complaints/x94z-ydhh?

33. Due to Defendant's constant autodialer calls and demands for payment Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA)

33. Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-three (33) above as if fully stated herein.

34. None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

35. Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number and even after Plaintiff revoked consent to be called and without Plaintiff's prior express consent,

36. The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in September, 2013, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact him, and told Defendant to stop calling him.

37. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, XEROX CORPORATION AND AFFILIATED COMPUTER SYSTEMS INC. (ACS), for statutory damages, actual damages, treble damages, costs, interest, and any other such relief the court may deem just and proper.

### COUNT II
**(Violation of the Florida Consumer Collection Practices Act "FCCPA")**

38. Plaintiff re-alleges paragraphs one (1) through thirty-seven (37) above as if fully stated herein:

39. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

40. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the Plaintiff with such frequency as can be reasonably be expected to harass the debtor.

41. Defendant has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse the Plaintiff.

42. Defendant has violated Florida Statute §559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knows that the debt is not legitimate.

43. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of actual and statutory damages as described by Florida Statute §559.77.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, XEROX CORPORATION AND AFFILIATED COMPUTER SYSTEMS INC. (ACS), for statutory damages, actual damages for emotional and mental pain and suffering, fear, humiliation, embarrassment, frustration and loss of capacity for the enjoyment of life, costs, interest, attorney's fees pursuant to F.S. §559.77, and any other such relief the court may deem just and proper.

Respectfully submitted,

Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 222-4725
Florida Bar #: 338620
Attorney for Plaintiff
TGomez@ForThePeople.com